Tilghman C. J.
It appears by the return to this habeas corpus, that Oliver Caulk, is imprisoned by virtue of a warrant from Daniel Sharp, inspector of the 1st brigade of the 1st division of Pennsylvania militia, for a fine of two dollars, imposed on him as an enrolled militia man, for non-attendance at the parade for discipline, on the Z7th October, 1817, which fine was not remitted by the court of appeal. The warrant is directed to a constable, and commands him to levy the fine, of the goods and chattels of the said Caulk, and for want of sufficient goods and chattels, tp take his body and convey him to the debtors’ apartment of the city and county of Philadelphia; there to be kept by the sheriff or keeper of the prison, until the saidfine and costs are paid.
It was given in evidence, that Oliver Caulk was enrolled as a militia man, in captain Abraham WandelVs, company. The muster roll was produced, verified by the oath of captain Wandell. It was also in evidence, that the name of the said Caulk, was not in the list of exempts, And I understand, that he is of the society of Friends, and conscientiously scrupulous of bearing arms. There was no evidence of his having ever consented to be enrolled as a militia man, other than the muster roll; and there is great reason to suppose^ that he never did give such consent. He never appeared before the court of appeal, and he was included in the list transmitted by the president of the said court, to the brigade inspector, of persons who had been fined, and whose fines were not remitted.
On the part of the said Caulk, two points have been made. Í. That this Court cannot consider him as an enrolled militia man, subject to a fine for non-attendance at parade. 2. That if he were, the warrant issued by the brigade inspector, was illegal and void.
1. In order to prove that he was not enrolled according to law, reference is had to the act of 21st March, 1816, under *85 which the enrollment was made. By the 2d section of this act, it is enacted, that within 15 days from the 1st day of October, in each year, the captain of each company, “ shall enrol each person residing within the limits of his company, liable to perform militia duty, and shall enter the name, age, and place of residence of every such person, in his roll-book; and also take, or cause to be taken, another list of such persons, as shall decline to be enrolled as aforesaid, who shall be considered as exempt, or persons exempted from training with the militia; and every person refusing to make a choice as aforesaid, shall be considered as an exempt, and shall be so entered in the enrolment.” The counsel for the Commonwealth contend, that in order to obtain the privilege of an exempt, some positive, affirmative act is necessary. If the matter rested on the first part of the sentence, I should think so too, for, declining to be enrolled, must be understood, as expressing a desire not to be enrolled. But how are we to' construe, the subsequent words, every person refusing to malte a choice as aforesaid, shall be considered as an exempt. I can perceive but one meaning, which is, that every person who did not expressly say, whether he desired to be enrolled or not, should be considered as an exempt. We must "not reject these words, or suppose that they were inserted without meaning. At first thought, it may appear extraordinary, that a man should have the privilege of an exempt, without expressing his desire of exemption. But upon reflection, it will appear, that this part of the law has been drawn with great consideration, and great tenderness towards those religious societies, who are conscientiously scrupulous of bearing arms. For it is well enough known, that some of those persons will say nothing on the subject. They would think it wrong to go to the Gaptain’s quarters, and express their desire to be placed on the list of exempts. The words which create the difficulty, have been thrown into the law, by some one who was acquainted with the extreme degree to which scruples are sometimes carried, and with a view of securing an exemption from militia duty, to persons of the most tender conscience. Nor is the Commonwealth' injured by this indulgence ; for in time of peace, the money of those who do not wish to be trained, is more valuable than their service. That this was the sense of the legislature, there can be no doubt; because the privilege of an exempt, *86 is not confined to persons of tender conscience ; every man who chooses, may enjoy it. Light may be thrown on this law, by recurring to another, made on the same subject, but repealed. By the act of 9th April, 1807, § 2, the officer making the enrolment, was directed, particularly to designate, all persons who should desire to be considered as exempts, &c.; but if any person should neglect or refuse, to make his choice as aforesaid the officer, was to place his name on the list of exempts. Now, although those two acts, are somewhat different in their expressions, yet, in substance they are the same; that is to say, they both consider those persons as exempts, who make no choice to be enrolled or not. The law of 1807, has indeed the word neglect, which is omitted in the law of 1816, but that is immaterial, because neglect amounts to refusal, within the obvious meaning of the act of 1816. It was the duty, therefore, of captain Wandell, to place Oliver Caulk on the list of exempts, unless he made choice to be enrolled. But the question is, in what character does Caulk appear to this Court ? His captain has returned him, on oath, as an enrolled militia man, his name was transmitted to the court of appeal, as such, with a memorandum of his being fined two dollars, for absence from the parade; he made no defence before that court, consequently his fine was not remitted, and his name was in the list sent by the president of the court to the brigade inspector, of persons who had incurred fines which had not been remitted. Although the court of appeal, be a court of limited and inferior jurisdiction, yet, their proceedings on matters submitted to them according to law, must not be questioned by this Court, on a habeas corpus. We must consider, therefore, whether the matter of Oliver Caulk’s, fine, was brought legally before the court of appeal, and what were the proceedings on it. The act of assembly directs, that the muster roll, or a copy, shall be sent to the court of appeal, with a list of those persons who have been fined, and also a list of the exempts. The power of the court is confined to the remission of fines. In the present instance, every thing which the law requires was done ; the muster roll, the list of persons fined, the list of exempts, were all sent. But it is objected, that the causes for which the court may remit fines, are specified in the act of 1814, sect. 24, viz. lameness, sickness, or other unavoidable cause; and, therefore, they could not remit the fine of *87 an exempt. But it must be observed, that although the act of 1814, being made during war, takes no notice of exempts, because in war no exemption was permitted; yet the supplement to that act, made in 1816, after the return of peace, restores the privilege of exemption, and expressly gives to the éxempts, the same right of appeal, either by themselves, or others on their behalf as is by law providedfor absentees. This provision extends the jurisdiction of the court of appeal to the cases of exempts j so that whether Oliver Caulk was an enrolled militia man, or an exempt, he might have been heard before that court. But it is said, that he did not appeal, and, therefore, the court did not act upon his case, and cannot be said to have pronounced any judgment. I apprehend, that within the meaning of the act of assembly, there was a proceeding in the case of every person who did not appeal. Every person had notice of the day of appeal, and those who did not appeal, virtually acquiesced in the fine which had been imposed on them. When this fine was not remitted, it was substantially confirmed, in the only way in which the law permits the court of appeal to act. In this respect they have but a negative office. They can do no positive act, but remit the fine. If they do not remit, they are not to give a judgment of affirmance, but in consequence of non-remission, the fine stands of course. The president of the court delivers to the brigade inspector a list of the persons whose fines were not remitted, and upon this he acts. It appears to me, therefore, that Oliver Caulk’s case was before the court of appeals, although he himself did not appear there, and that there was a proceeding in his case. Suppose he had been returned as an exempt, would it not have been the duty of that court to remit his fine as an absentee ? Undoubtedly it would. So if Oliver Caulk had attended the court of appeals, and satisfied them, that his name ought to have been on the list of exempts, but was placed on the muster roll, through a mistake of the captain, either in fact or law, it would have been the duty of the court to remit the fine. It is much to be wished, that the members of those respectable religious societies, whose consciences do not permit them to bear arms, would make themselves masters of the militia law, and pay attention to their own rights. I venture to say, that the law in, question has not been forgetful of them; but if they think it improper to take any steps on their own behalf, *88 they will unavoidably suffer; for when their cases are brought before the Courts, the Judges are bound by oath and conscience, to interpret the law according to its true meaning, wj£jlout regard to consequences. On full consideration, I am of opinion, that Oliver Caulk being returned as an enrolled militia man, and his fine not having been remitted, this Court can make no further inquiry into the subject. "
I am next to consider, whether, supposing him to be subject to the fine, the brigade inspector has issued such a warrant as is conformable to law. By the 20th section of the act of 28th March, 1814, the brigade inspector is to issue his warrant in each of the cases reported to him, directed to a constable, within the bounds of the county in which the delinquent resides, commanding him to levy and collect the penalty incurred in each case. The words levy and collect, are applicable to a seizure of property, and not to an arrest of the person; so that there would be no pretence for an imprisonment of the body, were it not for the subsequent expressions in the same paragraph, by which it is provided, that the constable shall proceed to collect the said fine, with costs, “ in the same manner, and with the like power and effect, as constables are required to proceed with, in executions by virtue of an act, entitled, “ an act to consolidate and amend, with its supplements, the act, entitled, “ an act for the recovery'of debts and demands, not exceeding 100 dollars, before a justice of the peace, and for the election of constables, and for other purposes, passed the 20th day of March, 1810.” Upon referring to this act, we perceive, that in case no property is to be found, the defendant is to be commited to jail, there to remain, until the debt and costs are paid. Had this case rested, therefore, on this section of the act of March, 1814, the construction must have been, that the delinquent is liable to imprisonment until the fine and costs are paid. But after inflicting fines in a number of cases specified in the 21st and 22d sections, the act proceeds to the 23d section, entitled, Collection of fines; the first paragraph of which declares, that all fines and forfeitures incurred under the said act, for the recovery and appropriation of which no mode is pointed out, shall be recovered by the brigade inspector, as debts of the like amount shall be by law recoverable, (that is, either before a justice, or in a court of record, as the amount shall exceed 100 dollars, or not.) The second paragraph *89 directs, that when any alderman or justice, shall have received from the brigade inspector, a certificate of any fines incurred, he shall proceed to recoyer and collect the same, in the same manner as debts of the like amount, may be by law recoverable. Thus we see, that a mode of recovery was pointed out in all possible cases, and each mode admitted of imprisonment of the delinquent, in case he had not property sufficient to satisfy the fine'and costs. Then comes the third paragraph of the same section, which enacts, in general terms, that “ in case any delinquent or delinquents shall neglect, or refuse, to pay the fine or penalty incurred by him or them, and in case no property shall be found, belonging to any such delinquent or delinquents to satisfy or discharge the same, the body or bodies of any such delinquent or delinquents shall be committed each upon a separate ■warrant, to the common jail of the proper county, there to be supported at the expense of the proper county, not less than one nor more than three months, at the discretion of the field officers of the regiment within the bounds of which such, delinquent or delinquents shall have resided, or until the delinquent or delinquents shall have paid the penalty or penalties incurred, or shall be discharged by due course of law.” The object of this paragraph plainly is, to restrict the power of indefinite imprisonment, which would otherwise have arisen, from the preceding part of the law. It is general in its expressions, and appears to be as general in its intent, except in one or two instances, where the time of imprisonment had been limited ; (for example, persons having public property in their possession, and refusing to give it up, are liable to a fine of treble the value, and for want of effects, to pay the fine, they may be committed to jail for a term not exceeding one month.) I have sought in vain, for a reason, which should induce the legislature to subject a militia man, whose poverty did not afford goods to the amount of two dollars, to an unlimited term of imprisonment; when at the same time they extended their clemency to others, who had incurred greater penalties, and therefore must be supposed to have been more culpable. What right then, has the Court to restrict that general clemency which the words of the act import, and by what rule shall we distinguish the cases to be exc.epted ? I have thought much on the subject, and can find no satisfactory principles on which the generality of the expressions can be *90 restrained. Nay, I am strongly inclined to believe, that the very case of militia men fined for absence, was directly in the mind of the legislature, from their having ordered, that a separafC warrant should issue in each case. This is particularly applicable to absentees, whose names appear in one roll, and against whom a joint warrant used formerly to issue. I am satisfied, therefore, that the safest construction of the law is to protect the absentees from imprisonment longer' than three months. Consequently the warrant in the present case, is unlawful, because Oliver Caulk is committed indefinitely until the fine and costs are paid. It is objected, that there will be great difficulty in framing a warrant under this construction of the act, because it is uncertain what'length of imprisonment the field officers of the regiment may direct. Although it is not strictly the duty of this Court to give advice as to the form of warrant, yet I will suggest a mode of proceeding which will remove all difficulty. Let the field officers be called together, before any warrants issue, and determine the period of imprisonment in the case of each delinquent. The warrant may then order the constable to levy on property, if to be found, but if not, to imprison the delinquent for the time directed by the field officers^ with a recital, that the said officers had, in pursuance of the act of assembly, directed the imprisonment to be for such time.
Upon the whole, I am of opinion, that Oliver Caulk is liable to the fine of two dollars, but that the brigade inspector has issued a warrant contrary to the act of assembly. The warrant being illegal, the prisoner should be discharged.
Gibson J.
There" cannot, I think, be a doubt, but that the relator is to be considered as an exempt, under the second section of the act of 1816. The captain is to enrol each-person subject to militia duty within the bounds of his company, and also take a list of all persons who shall decline to be enrolled. Did the matter rest here there would be no difficulty; the enrolment would include the party of course, and he could only avoid it, by doing a positive act, evincing his dissent. This would be the natural and obvious meaning of the word. But this meaning is qualified and changed by the, succeeding clause, “ that every person refusing to make a choice as aforesaidf shall be considered an exempt. This, without the word “ aforesaid,” would be a distinct and sub *91 stantive provision, which I confess, in that view, would equally embrace the case of the relator; but as both clauses stand together, the latter shews what the legislature meant by “ declining” to be enrolled ; to wit, refusing to make a choice to be included in the enrolment. I do not mean to say, that a militia man may not positively decline ; on the contrary, by doing so, he satisfies the letter of both clauses. The object of the second clause, no doubt, was to enable a large and very respectable class of our fellow citizens, conscientiously scrupulous against bearing arms, or doing any act required by law s'of a military character, to slide insensibly into the class of exempts. Had the law been otherwise, it is certain, these citizens would have been deprived of the benefit of the provision, if benefit it be; for we know they will do no act which acknowledges a military character, as appertaining to them ; not even the payment of a fine ; preferring rather to suffer their property to be sold. This we call prejudice ; but if it be so, a conscientious prejudice has as strong a claim on our indulgence, where it comes not in conflict with the public weal and security, as an opinion founded on the plainest and most obvious principles of reason.
But that the proceedings of the court of appeal are conclusive in the present inquiry, I have as little doubt. On the subject of the collusiveness of the sentence of a court martial or court of appeal, I expressed an opinion in the case of Houston v. Dicks and others, which nothing has since induced me to change. I shall only add, that I do not consider the acts of 1814 and 1816, as establishing any new principle, but as declaratory of the common law, except so far as the courts are precluded from taking appellate jurisdiction, or sustaining an exception on the ground of informality, or entertaining an action of trespass for acts done pursuant to such sentience. The remedy by habeas corpus is preserved as fully and entire as it existed before the act of 1814 ; but It does not follow, that we are at liberty to re-hear on its merits the matter decided by the court of appeal. If the court has decided on a matter within its jurisdiction, there is an end of inquiry ; it has passed in rem, judicatum. I confess my impression at one period of the argument was, that the court of appeal had not decided at all in this instance, not having a power to impose a fine, but only to remit one, and having, as *92 it struck me, merely an appellate jurisdiction to act on au appe al actually taken by a party coming, before it for that purpose ; and that as the relator had not appeared before the court of appeal, his case had not been submitted to it. But I am satisfied this Court does necessarily pass on the case of every absentee returned to it. A list of absentees is laid before it, as the subject of its inquiry. An opportunity is afforded to each person whose name is found on it, to appear and make his defence, and this list with the fines remitted is certified to the colonel, and notice of the fines hot remitted, given to the brigade inspector, preparatory to his issuing process. It is said the law imposes the fine ; be it so. But has the court of appeal no agency in giving effect and operation to the particular provision imposing it? Would not process issued without the list of cases having been first submitted to this tribunal, be illegal ? If the imposition of the penalty were complete before this tribunal had acted, this consequence would not follow ; and all that a party could complain of would be that the brigade inspector had proceeded to execution without giving him an opportunity of carrying his case before another tribunal; but the proceedings would be regular on their face. That the court should in fact take into consideration each case separately is not requisite. A party having an opportunity of being heard is contemplation of law actually heard. But then it is said, that the court of appeal is limited in the exercise of its powers to granting . relief in specific cases, and for specific reasons, different from' the relief to which the relator was entitled. Under the í-R. of 1814 it was so ; lor under that act, there were no exempts ; and as to enrolments, illegal, on other grounds, as of persons above the age of forty-five years, or exempt, entirely, from the operation of the militia law, it was not necessary that court should act, such persons being without its jurisdiction. But the case of an exempt is different: he js within the scope of the militia law, and having jurisdiction over his person, he is bound by the judgments of the courts organized under it, and to prevent injustice, the right to an appeal is accordingly secured to him by the section of the act creating this class of militia-men. It is argued, however, that the appeal is given to him, and must be demanded in the character of an exempt j and that the list being laid before the court of appeal, at its last session in the year, an exempt can *93 not have an appeal before he is known to the court in that character ; and that, in the present instance, the relator not having been classed as an exempt, could not at any time have an appeal. This is a forced and unnatural construction, tending to render the right of appeal of little value. At the end of the year, when the whole fine is due, having been incur-ed by the very act of becoming- an exempt, I am at a loss to know what the exempt could have to urge. But if a militiaman has been deprived of the right and benefit of becoming an exempt, he has something to complain of that may require the intervention of such a court; it is the very thing the relator now complains of. He must go before the court of appeal in the character of an exempt, I grant, but it does not follow that the court must acknowledge the justice of his claim to that character before it can entertain his appeal; that would be a petitio principa. I am not only of opinion that the court of appeal had the power of acting on the relator’s case, but that it did act; and consequently that the proceeding being in the nature of a sentence is conclusive. Were it otherwise, the provisions of the twenty-fifth section of the act of 1814, and the third section of the act of 1816, would be'nugatory as to this sort of Court, which is expressly included and spoken of as a Court whose sentence or decision, is to be conclusive. It evidently was the intention of the first mentioned act that these proceedings should be considered as a sentence, and the second expressly mentions its 11 proceedings” as being so. But objections are made to the form of the process under which the relator has been committed. It is said the brigade inspector is not the proper officer to enforce the collection of the fines, but that it must be sued for before a justice of the peace, as debts of the same amount. By the twenty-third section of the act of 1814, this is the case where no specific mode of proceeding is pointed out. But by the twentieth section there is a mode pointed out, and the brigade inspector is to issue his warrant to carry into execution the sentences of courts-martial, and to collect penalties not! remitted by a court of appeal. This provision, I admit, is applicable, though not exclusively so, (as argued by the counsel of the relator,) to the case of a court of appeal, convened by the brigade inspector, when about to enforce a penalty under the twenty-fourth section ; for, according to the argument, that court does not remit a fine, but inflicts one. The *94 penalties recoverable before a justice of the peace, are those imposed on offences committed against the provisions of the militia law, by persons not enrolled, and not subject to military controul. It is very proper that such persons should be tried before a civil tribunal. The trial of a person not a soldier, perhaps a woman, by a court-martial, would be a novelty, and certainly not in strict accordance with the constitutional injunction of keeping the military in strict subjection to the civil power. But there are fines for offences committed by officers and privates, under the twenty-first section of the act of 1814, for the collection of which no particular mode is pointed out; such as a captain neglecting to furnish a class list, an- officer or private pledging public property, or leaving parade without the permission of the commanding officer, and a variety of others. These are recoverable by a justice of the peace, and are alluded to in that part of the twenty-first section, which provides that the justice, on receiving a return of fines by any officer or private, shall proceed to recover them as debts of like amount. And this provision is satisfied, and the law rendered consistent throughout, without giving the justice jurisdiction over fines unremitted by a court of appeal.
But, granting the brigade inspector is the proper officer to issue the process, still it.is said the warrant, in this instance, is not in proper form, and that this error, in form, is to the relator a matter of substance, the commitment being for an indefinite period, when it ought to have been for a term at most not exceeding two months. On this part of the case, I acknowledge I feel hesitation and doubt. By the twentieth section of the act of 1814, the brigade inspector is to issue his warrant to the constable, commanding him to levy and collect the penalty incurred ; • and the constable is to proceed with the like power, and in the same manner, as under an execution issued by virtue of the one hundred dollar act. I see no objection to the setting out specially the course to be pursued by the constable. I doubt whether the warrant would be good- without it. If this were all that is to be found on the subject, this warrant would indisputably be good. But in the twenty-third section we find that if any delinquent shall refuse to pay his fine, and no property shall be found, belonging to him, he shall be committed for not less than one, nor more than two months, at the discretion of the f eld ofjicers of *95 the regiment. This is a general provision, not particularly applicable to any case of commitment; and i.t would be difficult, and perhaps a harsh construction, to restrain the generality of the words ; particularly as the relator, not, perhaps, being entitled to the benefit of the insolvent laws, might be detained indefinitely, and this commitment might, in effect, be a commitment for life. The words of the clause, last referred to, are extensive enough, to embrace every penalty incurred under the law. Why should it be so-construed as to exclude the relator’s case?- Shall there be a period of limitation to the confinement of a culprit, convicted of a positive crime, (drunkenness on parade for instance), by the sentence of a court martial, and shall a penalty for a mere omission, arising possibly from poverty, and an absolute necessity of being absent to provide sustenance for his family, subject an absentee to indefinite imprisonment? It is evident, the legislature did not view absence from training, as the -most unpardonable offence that might be committed against the act, or the smallest pecuniary penalty would not have been attached to it. If the provision does not apply to a penalty of this kind, to what does it apply ? What reason is there for referring it to penalties enforced by the sentence of a court martial, or recovered by the judgment of a justice of the peace, that does not at least equally apply to that class . that are recovered through the intervention of a court of appeal. The provision is found under the general head of the collection of fines; the letter extends to all cases, and I have no doubt, was intended to embrace all cases; for it must have occurred to the legislature, that in case of inability to discharge the penalty, the imprisonment without a provision of this kind, would be perpetual; and I think it highly probable, that if any case was particularly in view, it was that of an absentee from training. Of this, the injunction in the clause itself,- that the commitment shall be on separate warrants, is satisfactory evidence. Cases of penalties for other offences, must, from their nature, be unconnected with each other, and could not without confusion and inconvenience, be included in the same warrant. But penalties for delinquencies of this sort must be numerous, incurred at the same time, and by the same kind of-omission, proceeded on together, and returned together in a list to the brigade inspector for collections hence the propriety of directing separate *96 warrants; and I am informed, before this act, the practice was to include all in one. I am disposed to give this part of the law its utmost effect; and extending it to the case of tjje reiatorj jt follows, that the commitment is substantially bad. Every commitment must have a proper conclusion, and where it is-under a statute, the provisions of the statute must'be pursued. Hawk. p. 6, book 2, ch. 16, sect. 18. In Hollingshead’s. case, 1 Salk. 351, a bankrupt was committed by the commissioners, for refusing to be examined, and the conclusion was, until he submit, “ or be otherwise discharged, by due course of law,” whereas, the. statute directed, that he should be committed, “ till he submit himself to be examined by the commissioners,” and he was discharged On a habeas corpus. So in Bracy’s case, 1 Salk. 348, where the bankrupt was committed by the commissioners, “ till he conform himself to our authority;” and mToxley’s case, Carthewpi9\,pl. 3, the commitment of a catholic priest, for refusing to answer, was held bad, because the commitment was to prison, “ there to remain, till he shall be discharged by due course of law,” when the words of the statute were special, authorising a commitment until he shall answer the question. Here, the commitment is in execution, “ until he pay the fine and costs.” The act directs, that delinquents shall be committed to the jail of the proper, county, not less than one, nor more/than two months, at the discretion of the field officers of the regiment, within the bounds of .which the offender resides, or until he shall have-paid the penalty, or have been discharged by due course of law. It is obvious, therefore, .the commitment does not follow the act, and the consequences of. the variance-to, the delinquent may be.most serious., It may be difficult to ascertain what is a proper form, or -how the commitment maybe fashioned, so,as to give the delinquent the full benefit of the provision, without practical inconvenience. I think the warrant would be good, iff the words were followed, leaving the field officers to exercise their discretion or not, they giving notice of their decision to the jailor, in case they thought proper> to remit any part of the time within their controul; and if those officers did not choose thus’ to interfere, the confinement w.ould, at the utmost, endure but for two months. To this ! see no objection on the ground of uncertainty, for the jailor knows exactly what he has to do; he must detain his-prisoner for tw.o months, if he be not *97 sooner discharged by competent authority. But if uncertainty dp exist, it is created by a positive statute, and the commitment would not thereby be rendered void. But the field officers might exercise their discretion before the issuing of the warrant, and thus give an opportunity to the brigade inspector, to insert the exact period of confinement to be suffered, in the event of the delinquent being committed ; and I would lean to support either course. It is, however, immatei'ial, in the present inquiry, how, or in what form, the delinquent is to have the benefit of the provision in his favour ; it is sufficient, that the form of the commitment, under which the relator is detained, excludes it. To be set at large on this ground, may be of small advantage to him, as he may the next moment be taken on a new warrant, unexceptionable in this particular. But, as he appears to me to be illegally detained, I am bound to say, I think he ought to be discharged.
Duncan J.
This Court is not sitting as a court of error, to revise the regularity of the proceedings on which the warrant of commitment issued. It will be enough, if we find a sentence pronounced by a court of competent jurisdiction, to inquire into the offence, and with power to inflict the penalty, and a warrant founded on that sentence, and not transcending the punishment and penalty inflicted by law; and further than this we cannot look.
There appears more importance attached to this case than, it merits. The inquiry has no relation to religious persuasions or conscientious scruples, nor does it give rise to the discussion of any constitutional question. For whatever may be the construction of the act of 19th March, 1816, whether that contended for on the part of the relator, or by those supporting the commitment, the difference is unimportant; for the penalties for th.e year are the same ; the offence fhe same ; the tribunal the same ; and the mode of execution the same. The only difference consists in this, that if enrolled, the penalty is inflicted three times in the year, if exempt, only once in the year.
If the question was now open for inquiry in this return, the inclination of my mind is, that the captain should havq placed Oliver Caulk on the exempt list; to some the exemption would be considered as punishment, by others, enrol *98 ment would; to all whose religious persuasions and honest consciences, forbid the use of arms, and submission to military discipline, enrolment would be considered as punishment_ And I cannot but consider, that the framers of this enacted in the time of peace, looked to that class of citizens, numerous and respectable as they are, who were members of religious societies, who conscientiously bear testimony against the use of arms, Friends, Menonistsi Dunkers, whose, scruples are regarded by the constitution, and whose exemption from personal military service it se- • cures, while it subjects them to pecuniary contribution, ■ in lieu of personal service, and to others, who had no religious scruples on that score, but who might choose to submit to a small penalty, payable only once in the year, rather than be subject to military training. Keeping in view these two classes of exempts, those exempt from choice, and those for conscience sake, it was expected that the first would make the choice at the time of enrolment, by declaring their disinclination to be enrolled, but those who declined training for conscience sake, having no choice to make, the unusual phraseology of refusing to make a choice was adopted; by this construction, the whole clause is consistent and intelligible ; in no other way can we account for the consequence of refusing to make a choice; exemption from enrolment. If to .decline to be enrolled, signifies an act done, then to decline to be enrolled, is a refusal to be enrolled, and the choice .is made ; then follows the provision to members of all religious societies, who have conscientious scruples—those who by their public religious profession, had given testimony, that they had made their choice; they have no choice to make, and, therefore, must be considered as refusing to make a choice.
Conscience might be as much affected by an agreement to commute, as by the commission of the act itself; it would, by many, be considered as a compromise with conscience; as the purchase of an indulgence; as taking out a dispensation ; as a voluntary contribution for military purposes; it cannot justly be supposed, that the legislature, well knowing that this was the course of reasoning of many tender consciences, would offer them the choice, while they well, knew their consciences would not permit them to make a choice at all.
*99 But in any view of this subject, I would consider the negleet to make the choice the act of omission ; would amount to an act of refusal; refusing to make a choice; if this is to be a positive affirmative act of refusal, to whom, where, and in what form is it to be made ? If one has the choice of two things, and on his refusal to make such choice, a certain consequence is to follow,-in a certain time ; and he is called upon to make the choice, and remains silent, this would amount to a declining and refusal. It would not be necessary for him to say in so many words, I refuse to make, a choice; his silence woiild amount to a refusal, and the prescribed consequence follows. I should have more difficulty in coming to this conclusion, if the consequence of -refusal was enrolment. Voluntary silence is a refusal to speak.
But if this be so, another question of great and general importance remains to be considered. Is the commitment on the warrant of the brigade inspector, made by a competent authority ? This must depend on the commitment itself. The question is, had the brigade inspector complete authority over the man and over the subject?
Oliver Caulk was the subject of enrolment; was liable to be enrolled, and if enrolled, was subject to the prescribed penalty for non-attendance ; and it cannot be enquired into, whether the enrolment was regular or irregular; the' course pursued, is in the mode, and by the persons authorised by the act. The brigade inspector in issuing the warrant, the constable in executing it, the keeper in detaining him in confinement, would be justified. All the matters necessary to give jurisdiction exist; .residence of Oliver Caulk; the commission of captain Wandell; the notice of enrolment; the non-attendance ; the notice of appeal; the delivery of enrolment by captain Wandell to the brigade inspector; organisation of the court of appeal for the regiment; enrollment and list of exempts delivered to the president; that the fine for non-attendance was not remitted by the court of appeals; that all these proceedings being before the brigade inspector, he issued his warrant. It must in presumption, and in the reason of the thing be, that such proceedings are final and conclusive.
Under the act of 1814, there are no exempts; there are under that of 1816, and the right of appeal granted to such exempts ; the court of appeal then acted on the whole ; the *100 enrolled militia man and the exempt. The man claiming to be exempt, but who is returned to the court of appeals, as an enrolled absentee, has thus presented to him an opportunity of a hearing an appeal to a court competent to decide and to grant him relief.
Oliver Caulk was a free able bodied white male person, above the age of eighteen, and under forty-five; he fell not within any exception of the act of 1814; he was liable to be enrolled as a militia man ; he was enrolled as such; the law itself fixed the fine for non-attendance; he was returned to the brigade inspector, and to the president of the court of appeals ; his fine was not remitted ; all these facts ascertained by the legal evidence, by the brigade inspector; all these gave authority to the brigade inspector to issue his warrant; it became his duty so to do; if he refused, he rendered- himself liable to punishment; he was charged with the fines not remitted, in the books of the state treasurer. It is indiffer- ' ent what these proceedings are denominated, or what the tribunal be called. It is through the medium of persons appointed by law, clothed with authority, and whose proceedings from their nature must be final, when they act within the limits of the legislative jurisdiction. Call the persons what you may, judges, commissioned officers, civil courts, courts martial, the proceedings are declared to be final; they have a general jurisdiction, on a subject matter which they have not exceeded, and all that they have decided is conclusive.
The enrolment, the exempt lists, were before the court of appeal. The party might on that appeal have shewed, that he was improperly returned as an enrolled militia man, as he had declined to be enrolled, in declining to make a choice. The enrolment appealed from ; the fine for non-attendance, its necessary incident, are to be considered as matters of which the party makes no complaint, to which he submits; in one word, are to be taken pro confesso, cannot be traversed in trespass against the officer, or questioned on a return to a habeas corpus.
The case of Wise v. Withers decides nothing but this, that all are trespassers where the proceedings are against’a person not subject to the jurisdiction, as was the case there; the man not liable to be enrolled, consequently not the subject of the militia law, all was void, coram non judice; for the same *101 law which gave the jurisdiction, excepted out of. this jurisdiction the individual. Militia laws courts martial are to be considered as all other laws, and all other inferior eourts, the decision final when within the jurisdiction, but all void when not within that jurisdiction. The man who declines to avail himself of an opportunity offered by the law, by appeal to a tribunal competent to grant relief, to rectify the errors and mistakes of which he complains, has but little reason to complain of the injustice or hardship of the law. If those proceedings were not conclusive, all laws for training the militia would be nugatory; for who, worthy of military command, would accept of a commission which must constantly expose him to vexation and expensive suits for the faithful discharge of his official duties. Let it be understood, that though I adopt the doctrine of the conclusive nature of these proceedings to all this latitude and extent, yet I confine it to cases where the officer acts within the scope of the legal authority conferred on him ; if he exceeds this, his acts are usurpation and void, and he is a trespasser.
Thus understood, the military are in due subordination to the civil authority ; the service, instead of being 'rendered ridiculous to honourable men, will be considered as it ought, as highly respectable and honourable.
I will just add, that although courts will respect the religious scruples of all men, yet this respect must not carry them, in the administration of justice, to adopt principles unknown to the constitution and the laws, and subversive of the execution of laws which they have reason to observe ; but courts, civil and military, and the officers who execute laws repugnant to the conscientious scruples of respectable societies, will always perform the duties with tenderness, and in a way least offensive to their sincere and honest prejudices; but still the laws must be obeyed.
Objection is made to the warrant of commitment, as not being authorised by the act for the regulation of the militia.
I am well satisfied with the postponement of. the consideration of this objection ; as it has afforded aii opportunity of considering more fully the provisions of an act forming a general system on a most important subject. A subject which, of all the arduous matters of legislation, appears from long experience, to be the most arduous and difficult.
The blending of courts of civil jurisdiction with those of a *102 martial cast; civil process with military mandates; has rendered this act difficult of construction; so as to mould its apparently jarring parts into one consistent plan.
The penalties inflicted are of two kinds, those on the subject of persons enrolled, or liable to be enrolled, as militia men, and those on citizens not the subject of enrolment, as for acts not properly of military cognisance.
Of the first cías are delinquents, such as Oliver Caulk. Of the latter class, are those citizens who are rendered liable to certain penalties specified in the act, as for selling spiritous liquors on the parade ground. Those of the first class are subject to the jurisdiction of courts martial and courts of appeal, held by military officer's; those of the latter, are deliverer! over-to the civil authority ; for the 20th section speciallyprovides, that as soon as any brigade inspector shall have ascertained, that any penalty or penalties specified in the act shall have been incurred, by any person or persons not enrolled in the militia, he shall make a representation thereof to the proper alderman or justice of the peace, and the said alderman or justice, after having had the requisite proof, that any penalty or penalties had been so incurred, shall proceed to sue for and recover the same, as debts of the like amount are, or shall be by law recoverable;” but as the penalties in one case might exceed 100 dollars, jurisdiction is given to the courts of record, “ Where the executors or administrators of any person who shall have been intrusted- with any books, vouchers, or other property belonging to this Commonwealth, shall have refused for twenty days after demand made, to deliver up the same to the brigade inspector, such person or persons so offending shall forfeit and pay a sum equal to double the amount of the value of the said property to be recovered by action of debt jn the name of the brigade inspector in any court of record within this state.” '
For one penalty there is a different course taken ; for “ if any person shall have knowingly sold, bought, taken, concealed, &c. any public arms, &c. and be thereof convicted before any justice or alderman, &c. he shall forfeit and pay double the value, to be ascertained by such justice or alderman, and levied at the. suit of the brigade inspector, by distress and sale of the offender’s goods, and for want of such distress he shall commit such offender to the common jail of the county, there to remain at the expense of the county for any time not *103 exceeding one month, unless such money shall have been sooner paid,”
The manner of collecting fines, incurred for non-attendance on muster days, is not very clearly expressed. “ The brigade inspector shall issue a warrant under his hand and seal to any constable, commanding him to levy and collect the same, and the constable shall proceed to collect in the same manner, and with the like power and effect, as constables are required to proceed with executions, under the acts for recovery of debts and demands not exceeding 100 dollars.” Did it rest on this clause alone, this warrant and commitment would be conformable to the law; but as it could not be the intention of the legislature, that the delinquent who was unable to pay should be imprisoned for life, a provision is made by the 28th section, “ that in case any delinquent or delinquents shall neglect or refuse to pay the fine or penalty incurred by him or them, and in case no property shall be found, the bodies of such delinquents shall be committed, each on a separate warrant, to the common jail of the proper county, there to be supported at the county expense ■ not less than one nor more than two months, at the discretion of the field officers of the regiment, or until the delinquent shall have paid the penalty incurred, or be discharged . by due course of law.”
This is so comprehensive in its terms as to ride over all the other special provisions ; yet clearly such could not have been the intention of the legislature, for it extended not to actions of clebt in courts of record, and executions issued thereon. It extends not to a case where, for want of sufficient distress, the inspector is limited to a period not exceeding one month. What then is the reasonable construction ? It is to be restrained to cases of delinquency in military duties by persons enrolled or liable to be enrolled as militia men; where the person and the offence are subjects of military cognisance, and the course of proceeding is by a military tribunal or officer, and extends to no casé where the remedy is by a civil tribunal, alderman, justice, or court of record, for neither of these civil jurisdictions could issue an execution in conformity thereto. For it would introduce a strange confusion, if, after a recovery of a penalty in a court of record or before a justice or alderman, a military forum should - be again convened, and at their discretion change the nature of *104 the judgment and execution. It is worthy of observation, that all delinquents on the score of military duties, are to be tried by a military power, and that all penalties incurred by persons not enrolled in the militia are delivered over to the. civil power.
In this way alone, can consistency be preserved with the special provision of the 20th section, for that does not pre scribe any particular form of warrant, nor does it authorise in express terms, the brigade inspector to command the constable to levy and collect; and although the constable is to proceed to collect with like power and effect as in cases of other debts, yet this may be confined to a collection by levy and sale of goods, and hot by imprisonment of the body. But in what manner is the warrant in this case to issue ? How is it to be executed ? The warrant from the brigade inspector in the first instance to the constable, is to contain a command to levy and collect all the fines in his bounds for non-attendance, according to the schedule containing the names and sums and in all cases where they have not been remitted by the court of appeals, by distress and sale of the delinquent’s effects, if such can be found, but if sufficient distress cannot be found, to return the same to the brigade inspector within forty days, who is to lay the return before the field officers of the regiment, whose duty it is made to exercise their discretion by adjudging the confinement, which is not to be less than one nor more than two months; and the brigade inspector is to issue a separate warrant in the case of each delinquent to the constable, to take the body and commit it to jail for the period, or until the delinquent shall have paid the penalty or be discharged by due course of law. This opinion is founded on the connection of the 20th and 23d sections. The 20th provides, “ that the constable, after he receives the original warrant, under the penalty of 30 dollars, shall call upon each delinquent within twenty days, and demand payment, and if not paid within 10 days after demand he is to proceed to levy and collect the same, and within forty days he is to pay the amount of all the fines on his schedule to the brigade inspector, and if he does not do so within the specified time, he is to forfeit and pay double the amount to the brigade inspector, except only such fines as by the field officers to whose regiment the delinquent belongs, shall have been judged impracticable to collect; and the 23d provides, that in *105 case any delinquent shall neglect or refuse to pay the fine incurred, and in case no property shall be found to satisfy the same, then the body of such delinquent shall be committed on a separate warrant for a time, not less than one nor more than two months, at the discretion of the field officers of the regiment.
I incline to think, that the first warrant is to be a general one, to levy and collect the whole fines incurred for non-attendance within the constable’s bounds ; stating the nanié and sum; and that in the general -list and.warrant the constable is to return to the brigade inspector the names of such as have no property to levy on; these he is to be credited with, and all the other fines he is bound to pay over within forty days.
The first precept is in the nature of a general schedule of the fines incurred for non-attendance, and by whom ; the second is a separate and particular warrant against each individual returned as having no property, and commanding the constable to commit the body for the time prescribed, or until the fine is paid, or the party discharged by due course of law.
To the absentee from training the word delinquent is particularly applied; he is emphatically called a delinquent in the clause inflicting the penalty ; the non-performance of a required duty is more properly called a delinquency than the commission of a forbidden act.
The warrant and commitment are not authorised by law, and the man must be liberated from his confinement.
I wonder not that the brigade inspector fell into this error, for I am free to admit, that my first impression Was, that the commitment was legal, but on a more attentive consideration of the several provisions of the act, I have changed the opinion I had formed ; and adopted that which I have delivered as the only one which will reconcile all the provisions of the law, and while it preserves the particular provisions of the law, gives effect to one expressed in very general terms, and which would otherwise be totally inoperative.
Prisoner discharged.